**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MACK FINANCIAL SERVICES, *a division of*
*VFS US LLC, f/k/a Mack Commercial Finance*,
VOLVO FINANCIAL SERVICES, *a division*
*of VFS US LLC, f/k/a Volvo Commercial*
*Finance*

                           Plaintiffs,

               - against -

FRANK POCZATEK, ROBERT POCZATEK,

                        Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 10-3799 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     PRELIMINARY STATEMENT

       Plaintiffs Mack Financial Services ("Mack Financial") and Volvo Financial Services

("Volvo Financial") (collectively "Plaintiffs") commenced this diversity action asserting breach

of guaranty against Defendants Frank Poczatek and Robert Poczatek (collectively "Defendants").

The Complaint [DE 1] was filed on August 17, 2010, and an Amended Complaint [DE 8] was

filed on September 9, 2010.

       Neither Defendant ever responded to the Complaint or Amended Complaint nor did they

seek additional time to respond after being properly served with each pleading.  Thus, Plaintiffs

moved for a default judgment against Defendants.  DE 11.  Subsequently, the Clerk of the Court

issued a certificate of default as to both Defendants.  DE 16.  Judge Seybert referred the matter to

me for a Report and Recommendation as to whether the pending motion for default judgment

should be granted, and to determine the appropriate amount of damages, costs, and/or attorney's fees, if any, to be awarded based on such determination.  DE 19.

## II.    PERTINENT FACTS

Plaintiffs Mack Financial and Volvo Financial are each divisions of VFS US LLC.  Am. Compl., DE 8.  In 2004, Plaintiffs entered into a Master Loan and Security Agreement ("MLSA") with All Island Truck Leasing Corp. ("All Island") pursuant to which Plaintiffs agreed to finance All Island's acquisition of cars, trucks and related equipment.  DE 13 at 3.  Between 2004 and 2009, Plaintiffs and All Island entered into a total of 27 separate financing agreements, promissory notes, and/or credit agreements.  Am. Compl. ¶¶ 47, 52.

On October 12, 2004, Defendant Frank Poczatek signed a guaranty pursuant to which he agreed to unconditionally guarantee All Island's debts to Mack Financial and its affiliates.  *Id.* ¶ 51.  The language of the guarantee states that Defendant Frank Poczatek:

> unconditionally guarantees to Mack Financial Services, a division of VFS US LLC, and its affiliates and subsidiaries (each individually a "Creditor") the full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to the Creditor and its successors and assigns, from All Island Truck Leasing Corp . . . whether now owing or hereafter contracted, absolute or contingent, including all liabilities or obligations that [All Island] has incurred or may incur or from other dealings by which the Creditor may become in any manner a creditor of [All Island].

*Id.,* Ex. 14.  Defendant Frank Poczatek again signed identical guarantees on January 10, 2006 and November 14, 2006.  *Id.* ¶ 51.  Defendant Robert Poczatek signed a similarly worded guarantee on March 23, 2009 with Volvo Financial under which he agreed to "unconditionally guarantee" the debts of All Island to Volvo Financial and its affiliates.  *Id.,* Ex. 12.

All Island failed to make complete payments on all but one of the 27 financing agreements, promissory notes and/or credit agreements. *Id.* ¶¶ 47-48, 52-53. All Island then filed for bankruptcy on October 9, 2009. *Id.* ¶¶ 18, 31, 43. Pursuant to each agreement between All Island and Plaintiffs, the lack of payment and filing of bankruptcy constituted a default by All Island. *Id.* ¶17-19, 30-32, 42-44 and DE 12 (Affidavit of Bettye C. Carr, detailing default under each of the 26 agreements).

In light of the default by All Island, Plaintiffs brought this action to recover from the guarantors.

## III.   MOTION FOR A DEFAULT JUDGMENT

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06 CV 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.

### A.   Liability

As an initial matter, the Court must determine whether Plaintiffs have adequately pled the requirements for liability. The Court notes that the four guarantees at issue in this case state that

they are to be "governed by the internal laws of the State of North Carolina." DE 8, Exs. 12, 14.

A federal court sitting in diversity "applies the law of the forum state, including its choice-of-law rules, to determine the applicable substantive law." *Manheim Auto. Fin. Servs., Inc. v. Fleet Funding Corp.*, No. 09-CV-4357, 2010 WL 1692954, at *2 (E.D.N.Y. Mar. 22, 2010), *adopted by*, 2010 WL 1688565 (E.D.N.Y. Apr.22, 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

"New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir.2000). North Carolina has sufficient contacts with this transaction because both Plaintiffs maintain their principal places of business in North Carolina. *Manheim Auto. Fin. Servs., Inc.,* 2010 WL 1692954, at *2 (applying the contractual choice-of-law provision in the security agreement when one party's principal place of business is in that state). As such, North Carolina law must be applied to the determination of whether Plaintiffs have adequately pleaded a claim for breach of a guaranty. It is important to emphasize, however, that New York's rule honoring parties' choice of law governs substantive, not procedural issues. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384-85 (2d Cir.2007) (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551-52 (2d Cir.1987)).

Under North Carolina law, in order to establish a claim for breach of a guaranty, Plaintiffs must establish "(1) the existence of a contract of guaranty and (2) a breach of that contract." *Textron Financial Corp. v. Seven Falls Golf & River Club, LLC*, No. 09-cv-312, No. 2011 WL

251115, at *5 (W.D.N.C. Jan. 25, 2011); *see also Schandler v. New York Life Ins. Co.*, No. 09-10463, at *7, n.11 (S.D.N.Y. Apr. 26, 2011) (citing *Toomer v. Garrett*, 155 N.C.App. 462, 574 S.E.2d 76, 91 (N.C. Ct. App.2002) (internal citations omitted)).  Here, the four continuing guarantees between Plaintiffs and Defendants are valid contracts creating enforceable rights and obligations.  Plaintiffs have alleged that Defendants breached those agreements by failing to compensate Plaintiffs for the financial obligations of All Island.  Thus, Plaintiffs have sufficiently pleaded a claim for breach of guaranty under North Carolina law.

### B.    Entry of Default

For a movant to obtain a default judgment, it must complete a two-step process.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a); *see Fashiontv.com GMBH v. Hew*, No. 06 cv 3200, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007).  Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b), as Plaintiffs have done here.  *See Kiewit Constructors, Inc. v. Franbuilt, Inc.*, No. 07-CV-121A, 2007 WL 4405029, at *2 (W.D.N.Y. Dec. 14, 2007); *Fashiontv.com*, 2007 WL 2363694, at *2.  The Clerk of the Court noted the default of Defendants, but judgment has not been entered for Plaintiffs.  *See* DE 16.  Rule 55(b)(2) provides that, except in cases in which "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" (see Rule 55(b)(1)), "the party must apply to the court for a default judgment."  The determination of a motion for default judgment is left to the sound discretion of the district court.  *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999).

In determining whether to grant a default judgment, the court may consider "numerous factors, including 'whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt.'" *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y.2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–171 (2d Cir.2001). These factors are (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02Civ.9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted); *see also Basile v. Wiggs*, No. 08-CV-7549, 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for court's consideration including defaulting party's bad faith, "possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect") (second alteration in the original) (quoting *Feeley v. Whitman Corp.*, 65 F.Supp.2d 164, 171 (S.D.N.Y.1999)).

As to the first factor, the failure of both Defendants to respond to the Complaint and Amended Complaint sufficiently demonstrates willfulness. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007). Plaintiffs have submitted affidavits of service to the Clerk of the Court demonstrating that the Amended Complaint was personally served on both Frank Poczatek and Robert Poczatek on September 30,

2010.  *See* DE 9, 10; *see also* DE 2, 3.  As noted above, neither Defendant answered or responded in any way to the Complaint or Amended Complaint, nor did they request an extension of time to respond.  Therefore, the court file establishes that Defendants Frank and Robert Poczatek have failed to respond to the Complaint and Amended Complaint.

Next, the Court must consider whether Defendants have a meritorious defense.  The Court is unable to make a determination whether the Defendants have a meritorious defense to Plaintiffs' allegations because they have presented no such defense to the Court.  Hence, where no defense has been presented and, "[w]here, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Chen v. Jenna Lane, Inc*., 30 F. Supp. 2d 622, 623 (S.D.N.Y.1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3d ed.1998)).  The Amended Complaint, the allegations of which are deemed admitted by Defendants in light of their default, describes in detail the factual allegations that underlie Plaintiffs' claims for breach of guaranty.  *See Indymac Bank*, 2007 WL 4468652, at *1.

The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied.  Denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders Dist. Council*, 2003 WL 1960584, at *3).  Since all three factors have been met, a default judgment is warranted.  I therefore respectfully recommend to Judge

Seybert that a default judgment be entered against Defendants Frank Poczatek and Robert Poczatek.

**IV.    DAMAGES CALCULATION**

Plaintiffs seek recovery of the amounts due from All Island on the twenty-seven loans guaranteed by the Defendants, plus pre-judgment interest and attorney's fees.

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05–CV–0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc*., 58 F.3d 849, 854 (2d Cir.1995)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir.1992). The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc*., 951 F.2d 504, 508 (2d Cir.1991). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

**A.    Principal**

Under North Carolina law, "the injured party is entitled to the pecuniary difference between his position upon breach of the contract and what it would have been, had the contract

been performed." *Troitino v. Goodman*, 225 N.C. 406, 413 (N.C. 1945). Thus, the amount due on All Island's outstanding loans is the amount currently due by Defendants.

In support of their damages claim, Plaintiffs have submitted the detailed affidavit of Bettye C. Carr, who is employed by Plaintiffs and has personal knowledge of Plaintiffs' books and records. DE 12. Ms. Carr explains the terms of each of the 26 loans extended from Plaintiffs to All Island that have balances owing. The written agreements governing those transactions are attached to the affidavit. DE 12, Exs. 4-59. Likewise, a chart showing the balances due on 23 of the loans is also attached as an exhibit. DE 12, Ex. 6. The balances due on the remaining three loans are demonstrated in Ex. 23, 38, and 47. The Affidavit of Bettye Carr and the supporting documentation demonstrate that the principal amount due from All Island to Plaintiffs is $721,370.97. Thus, the Court finds that the principal amount due under the guarantees between Defendants and Plaintiffs is $721,370.97.[1] I respectfully recommend to Judge Seybert that this amount be awarded to the Plaintiffs.

### B.    Prejudgment Interest

Plaintiffs request that prejudgment interest be awarded pursuant to a clause contained in the MLSA between Plaintiffs and All Island. Plaintiffs calculate that interest pursuant to the New York statutory rate of nine percent (9%) per annum.

The MLSA contains an exhibit stating that "all obligations not paid when due shall bear interest from the due date or the judgment date, as applicable, until paid at a rate (the 'Default

---

[1]    While this is the principal amount sought by Plaintiffs in their motion for a default judgment, *see* DE 13 at 9, DE 12 ¶ 113, the Court notes that in the Amended Complaint Plaintiffs sought a higher amount of $794,353.32. DE 8 at 11. This discrepancy appears to stem from the fact that in the intervening time period between the Amended Complaint and the motion for default judgment, Plaintiffs were able to repossess and sell the vehicles securing those loans, thus adjusting downward the amounts due and owing. *See* DE 12, Exs. 23, 38, 47.

Rate') which is the lesser of eighteen percent (18%) per annum or the maximum rate permitted under applicable law." DE 24 ¶4, DE 12, Ex. 1. Each subsequent loan document executed by the Plaintiffs and All Island contained this exact language and was "made pursuant" to the MLSA. Because such prejudgment interest is provided for under the contracts with All Island, it is appropriate to award such interest under the guaranty.

Because the New York statutory prejudgment interest rate of 9% is less than the 18% maximum allowed in the contract, Plaintiffs used the 9% rate to calculate the interest owed. DE 24 ¶ 5. However, the Court notes that the MLSA and subsequent loan documents each contain a "choice of law" clause stating that they are "governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina." *See, e.g.,* DE 12 Ex. 1. As noted above, the guarantees executed by Defendants are also governed by North Carolina law. The Second Circuit has held that "under New York choice of law principles, the allowance of prejudgment interest is controlled by the law of [the state] whose law determined liability on the main claim." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008). Thus, North Carolina's law on prejudgment interest must be applied here.

"North Carolina limits the permissible interest rates on small commercial loans but does not restrict the maximum interest rates that may be charged on larger loans. With respect to such larger commercial loans the parties are free to bargain for any rate, whether fixed or variable, upon which they agree." *West Raleigh Group v. Massachusetts Mut. Life Ins. Co*., 809 F.Supp. 384, 389 (E.D.N.C. 1992). For "the maximum rate permitted," the relevant North Carolina statute provides:

a) Except as otherwise provided in this Chapter or other applicable law, the parties to a loan, purchase money loan, advance, commitment for a loan or forbearance other than a credit card, open-end, or similar loan may contract in writing for the payment of interest not in excess of:

(1) Where the principal amount is twenty-five thousand dollars ($25,000) or less, the rate set under subsection (c) of this section; or

(2) Any rate agreed upon by the parties where the principal amount is more than twenty-five thousand dollars ($25,000).

N.C.G.S.A. § 24-1.1.

Given that the principal due on All Island's loans exceeds $25,000 and that the loan documents allow for a rate of eighteen percent interest (18%) per annum, the Court concludes that the 18% interest rate governs this default.

Plaintiffs seek to recover interest from the date of the filing of the motion for a default judgment, February 1, 2011, to July 1, 2011, which is a total of 150 days. Multiplying the principal owed ($721,370.97) by a rate of 18% per annum, and then dividing that sum by 365 days, yields a total of $355.74 accruing in interest per day. Thus, for the 150 days of interest requested by Plaintiffs, Defendants owe $53,361.69 in prejudgment interest. I respectfully recommend to Judge Seybert that Plaintiffs be awarded $53,361.69 in prejudgment interest.

## C. Costs and Attorney's Fees

Plaintiff has also submitted a request for costs and attorney's fees. As mentioned above, "[u]nder New York choice of law principles, contractual choice of law clauses only apply to substantive issues; New York follows its own procedural rules." *See RLS Associates LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 214 (S.D.N.Y. 2006) (citing *Educ. Res. Inst., Inc. v. Piazza*, 17 A.D.3d 513, 794 N.Y.S.2d 65, 66 (N.Y .App. Div.2005)). Statutes that allow

recovery of attorney's fees are substantive for *Erie* purposes. *RLS Associates*, 464 F. Supp. 2d at 213. However, "[a] rule may be substantive for purposes of *Erie* analysis, but procedural under a state's choice of law analysis." *RLS Associate*s, 464 F. Supp. 2d at 214-15. This Court must apply the choice-of-law rules of New York to determine if the North Carolina rule for attorney's fees applies.

New York courts classify legal rules as "substantive" when they relate closely to an underlying right and "procedural" when they deal with the remedy by which that right is enforced. *RLS Associates*, 464 F. Supp. 2d at 217-18 (citing *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 687 N.Y.S.2d 604, 710 N.E.2d 250 (N.Y. 1999)) (discussing the New York Court of Appeals' analysis of substance and procedure in the choice of law context). State laws governing the computation of attorney's fees in a contract action have generally been held to be procedural. *See Gallagher v. Medeikon Corp.*, No. 08-cv-535, 2011 WL 841370, at *4 (E.D.N.Y. March 8, 2011) (applying New York law of attorney's fees to contract action governed by Delaware substantive law); *Manheim Automotive Financial Svcs, Inc. v. Fleet Funding Corp.*, No. 09-cv-4357, 2010 WL 1692954, at *6 (E.D.N.Y. Mar. 22, 2010) (applying New York law of attorney's fees to contract action governed by Georgia substantive law); s*ee also Bensen v. American Ultramar Ltd*., No. 92-cv-4220, 1997 WL 317343, at *15 (S.D.N.Y. June 12, 1997) (describing the American rule on attorney's fees as "a fundamental component of the state's procedural law"). The North Carolina statute governing attorney's fees sets out how attorney's fees are to be calculated in a contract action. *See* N.C.G.S.A. § 6-21.2. Thus, pursuant to the New York choice of law principles, the North Carolina statute is procedural and New York law will therefore govern the procedural issue of attorney's fees and costs in this action.

The guarantees entered into by the parties in this case provide that "in the event of any dispute regarding this Guaranty, Guarantor agrees to pay all costs and expenses of the Creditor (including reasonable attorney's fees and expenses) incurred in connection with such dispute, regardless of whether litigation or other action is instigated." DE 8, Exs. 12, 14. As such, an award of attorney's fees is appropriate in this case.

To determine reasonable attorney's fees, this Circuit has historically implemented the lodestar method by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). However, in *Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit determined that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190. Further, the Second Circuit reasoned that "[w]hat the district courts in this circuit produce is in effect not a lodestar as originally conceived but rather a 'presumptively reasonable fee." *Id.* at 189.

The presumptively reasonable fee standard is predicated on the same basic analysis "by calculating the product of the hours reasonably expended and a reasonable hourly rate."[2] *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.,* No. 04-CV-2293, 2009 WL 5185808, at *4 (E.D.N.Y. Dec. 23, 2009); *see also McDaniel v. County of Schenectady*, 595 F.3d

---

[2] The difference between the two methods is the lodestar method "would set the lodestar *and then* consider whether, in light of variables such as the difficulty of the case, it should adjust the lodestar before settling on the reasonable fee it was ultimately inclined to award." *Arbor Hill,* 522 F.3d at 187. However, the presumptively reasonable fee standard bears in mind "*all* of the case-specific variables . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190.

411, 417 n.2 (2d Cir. 2010) ("While the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method.").

Regarding the reasonable hourly rate portion of the presumptively reasonable fee standard, the Second Circuit has suggested that the district court consider "what a reasonable, paying client would be willing to pay" when setting a reasonable hourly rate.[3] *Arbor Hill,* 522 F.3d at 184. However, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). The Second Circuit has since clarified that district courts "may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys – in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. The Second Circuit cautioned that "[w]e presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* Nevertheless, "[t]his presumption may be rebutted – albeit only in the unusual case – if the party

---

[3] The Second Circuit lists the relevant factors in determining what a reasonable, paying client would be willing to pay as "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill,* 522 F.3d at 184.

wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances." *Id.*

To overcome the presumption in favor of the forum rule, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009). In *Simmons*, the Second Circuit advised that

> [i]n determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. . . . The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. . . . Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons,* 575 F.3d at 175-76 (internal citations omitted).

Regarding the hours expended portion of the presumptively reasonable fee standard, a court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Entral Group Int'l v. Sun Sports Bar Inc.,* No. 05-CV-4836, 2007 WL 2891419, at *9 (E.D.N.Y. Sept. 28, 2007). "[I]n the Second Circuit, motions for attorneys' fees must be based on contemporaneous time records

specifying relevant dates, time spent and work done." *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (citing *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d. Cir. 1994)). Moreover, any billed time which is unreasonable, excessive, redundant or unnecessary should be excluded in the calculation. *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999); *BMG Music v. Pena,* No. 05 CV 2310, 2007 WL 2089367, at *7 (E.D.N.Y. July 19, 2007).

Plaintiffs' seek attorney's fees in the amount of $4,130.12. *See* DE 25 (Declaration of Joshua Hurwit ("Hurwit Decl.")), at ¶ 6. This amount is comprised of $1,280.12 in fees for hourly work performed by counsel as well as $2,850 in fees paid to counsel on a flat-rate basis. *Id.* ¶ 7. In support of this request for fees, Plaintiffs have submitted a declaration of their attorney, Joshua Hurwit, of the New York City office of Gordon & Rees LLP, outlining the amounts of attorney's fees paid by Plaintiffs. DE 25. Mr. Hurwit's declaration attaches the monthly time records which account for work done by Gordon & Rees LLP during the "first phase" of the litigation, *i.e.* the drafting, filing and service of the Amended Complaint. Hurwit Decl. ¶ 8. Mr. Hurwit's declaration also attaches a "Billing Summary" showing fees purportedly paid under the flat-fee arrangement put in place for the default phase of the case. *Id.* ¶ 9. The individuals involved in Plaintiffs' representation were: (1) Associate Joshua Hurwit with an hourly billing rate of $215; (2) Associate Matthew Koster with an hourly billing rate of $215; and (3) Paralegal Stacey Ann Francis with an hourly billing rate of $115. *Id.,* Ex. 1.

### 1. *Hourly Fees Billed*

In support of their request for $1,280.12 in attorney's fees that were billed at hourly rates, Plaintiffs also rely on the Hurwit Declaration. DE 25. Mr. Hurwit does not state where the

attorneys working on the case were located, but the declaration itself was signed in New York City and the address of record for Plaintiffs' counsel is in New York City. DE 25 at 4. Thus, without any representation to the contrary, the Court presumes that the work was performed in the Southern District of New York. Plaintiffs have not cited any legal support for an award of attorney's fees at an out-of-district rate. In order to apply out-of-district rates, even those of the Southern District, Plaintiffs must overcome the presumption by experience-based, objective factors such as counsel's special expertise in litigating the particular type of case as well as a particularized showing that the use of in-district counsel would produce a substantially inferior result, such as by establishing that no in-district counsel possessed such expertise. *See Simmons*, 575 F.3d at 175-76.

Plaintiffs' submissions do not state that the attorneys working on this matter have any special expertise in litigating cases based on a breach of guaranty. Nor has Plaintiff made the necessary particularized showing that the use of in-district counsel would produce an inferior result. In fact, Plaintiffs provide no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or, alternatively, that no in-district counsel possessed such expertise. Accordingly, this Court must apply Eastern District of New York rates to determine a reasonable hourly rate.

Having considered the factors outlined by the Second Circuit, *see Arbor Hill*, 522 F.3d at 184, and having reviewed the reasonable hourly rates recently awarded by other courts in this District, I find that the rates charged by Plaintiffs' counsel are within the range of a reasonable fee standard in this district. In the Eastern District of New York, reasonable hourly rates for attorneys have ranged from $200 to $250 an hour for senior associates, $100 to $150 an hour for

junior associates, and $70 to $80 an hour for legal assistants.  *See Amerisource Corp. v. RxUSA Int'l Inc.,* No. 02-cv-2514, 2010 WL 2160017, at *11 (E.D.N.Y. May 26, 2010) (awarding $250 for associates in contract case)*; see also Trustees of the Local 813 I.B.T Ins. Trust Fund v. Sprint Recycling, Inc.*, No. 09-cv-4435, 2010 WL 3613839, at *4 (E.D.N.Y. Aug. 6, 2010); *General Elec. Capital Corp., LLC v. G. Howard Assoc., Inc.*, No. 09-CV-3923, 2010 WL 2346296, at *5-6 (E.D.N.Y. May 18, 2010); *Moran v. Sasso*, No. 05-CV4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009); *Duverger v. C & C Duplicators, Inc*., No. 08-CV-0721, 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009).  Considering these prevailing rates and all the circumstances of this case, I recommend that Judge Seybert award Plaintiffs for its hourly attorney's fees at the following hourly rates: $215 for Matthew Koster, $215 for Joshua Hurwit, and $100 for Stacey Ann Francis.

I next turn to the question of whether the hours expended by counsel were reasonable in an action this nature.  Based on my review of the monthly invoices, it appears that Plaintiffs seek reimbursement for a total of 6.5 hours of work, 3.2 hours worked by Attorney Hurwit, 2.8 hours worked by Attorney Koster and .5 hours worked by Paralegal Francis.  *See* DE 25, Ex. 1. After a review of the invoices submitted by Plaintiffs' counsel, the Court does not identify any unreasonable, excessive or unnecessary time that should be excluded.  Accordingly, I find that all 6.5 hours expended by Plaintiffs' law firm are properly included in calculating the attorney's fee award.

Based on the above analysis, I recommend to Judge Seybert that Plaintiffs be awarded attorney's fees for hourly rates charged broken down as follows: (1) Associate Hurwit's rate of $215 multiplied by 3.2 hours expended ($688); (2) Associate Koster's rate of $215 multiplied by

2.8 hours expended ($602); and (3) Paralegal Francis' rate of $100 multiplied by .5 hours expended ($50). This total of $1,340 must then be reduced by the $67.38 discount the firm gave its client, DE 25, Ex. 1, for a total sum of $1,272.62.

### 2. *Flat-Rate Billing*

Once Defendants failed to respond to the Amended Complaint, Plaintiffs' attorneys ceased billing at an hourly rate and instead billed Plaintiffs at a flat-rate of $2,850 for the remainder of the case. In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that "attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Broadcast Music, Inc.*, 919 F. Supp. at 661; *see also Cablevision Sys. New York City Corp. v. Figueroa*, No. 02-cv-5632, 2006 WL 1997394, at *5 (S.D.N.Y. June 1, 2006). In the present case, the Court need not determine whether the statement submitted by Plaintiffs is sufficiently detailed because the Court finds that the statement does not cover the appropriate time period.

In support for the award of the flat-fee, Plaintiffs submit a statement from their attorneys showing a charge of $2,850. DE 25, Ex. 2. The statement is dated August 23, 2010 and states that it is the "billing summary through July 31, 2010." *Id.* However, in Mr. Hurwit's declaration, he states that the flat fee arrangement was instituted *after* Defendants failed to answer the Amended Complaint. DE 25 ¶ 9. The Amended Complaint was not filed until September 9, 2010. Furthermore, the contemporaneous billing statements discussed above in regard to the *hourly* billing of the law firm reflect a final hourly time entry by Attorney Hurwit in September 29, 2010. The Court does not understand how Plaintiffs could have agreed to a flat-

fee billing arrangement for the default portion of the case before the default had actually

occurred. There may be an inadvertent error here on Plaintiffs' part and Plaintiffs may bring that

to the Court's attention, so long as they do so by September 16, 2011. Otherwise, for now, I have

no alternative but to recommend that no attorney's fees be awarded for the flat-fee payments

made to Plaintiffs' counsel unless Plaintiffs can submit an explanation or appropriate

documentation explaining this discrepancy.

### 3. Costs

As noted above, the underlying guarantees in this action allow for the recovery of costs.

Plaintiffs seek $599.19 in costs. *Id.* ¶ 6. The bulk of the costs incurred are in regard to filing

fees. *Id.*, Exs. 4-5. I find that these costs are recoverable and reasonable. *See Artemide Inc. v.*

*Spero Electric Corp.*, 09-cv-1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010) (awarding

$1,504 in costs). Thus, I recommend to Judge Seybert that Plaintiffs be awarded $599.19 in

costs.

## V. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Seybert that a default

judgment should be entered against Defendants Frank Poczatek and Robert Poczatek. In

addition, I further recommend that the Plaintiffs be awarded damages in the amount of

$776,604.47, broken down as follows:

- $721,370.97 in principal

- $53,361.69 in prejudgment interest

- $1,272.62 in attorney's fees, and

- $599.19 in costs.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883, 118 S. Ct. 211, 139 L. Ed. 2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Counsel for Plaintiffs is directed to serve this Order on Defendants forthwith and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
      August 30, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge